Good morning, your honors. May it please the court, Karen Baumholt on behalf of Appellant Intercontinental Industries Corporation. I'd like to reserve five minutes for rebuttal. Okay, watching it counts down. Thank you. My client bought a business from an LLC, a quintessential commercial transaction, and it turned out that that entire transaction and the transactions that followed it were an unfortunate scheme designed to take money from U.S. investors in China. One important point that I really want to convey today is that this court can't do what the respondents are asking the court to do, which is to look at each little piece of these transactions in isolation and to look at each claim in fact in isolation. You've got to view them together. Now the respondents are going to come up today and tell you, well, this is all about China. This is a factory in China, a contract executed in China, and breaches in China. But that focus is wrong because the courts have said you need to look at each element of the claims that are pled and if there's a single element that happens here in the United States, then foreign sovereign immunity isn't going to apply in certain circumstances. Well, that's not quite the case. That's not quite the test yet. Well, no, no, no. In certain circumstances. I'm sorry. To be clear, depending on the nature of the test. But the point is, depending on which test you apply, you need to look at the facts that happen here, not just at the fact that there's also activity in China. Now the district court erroneously dismissed this action on two grounds, of course, the Foreign Sovereign Immunities Act and Foreign Selection Clause. And I'd like to start obviously with the FSIA because that's a threshold issue. And I want to talk first about the direct effects test because that is the one that my predecessor counsel did adequately preserve below. But I do want to talk about the acts within the United States exception today because although it was not raised below, we believe that this court should consider both exceptions. And it was more than not raised. It was affirmatively disclaimed. It was affirmatively disclaimed. And having read the many hundreds of cases over the last few days again, in many respects, I understand why my former counsel did not, my client's former counsel didn't raise this. It's a very muddy-ish area of law. And it's very conflicted. This court's decision in Sachs came down. And cert was granted in Sachs. And now it's up before the Supreme Court, exactly. So it's constantly changing. So at a minimum, if we wanted to deal with that section, we would probably have to wait for the Supreme Court. I think that that might be true. The issues that are before the Supreme Court, at least as to the questions presented, may not affect this case. But they deal largely with agency. Pardon me? They deal largely with agency, I think. They deal largely with agency. And I don't think that the respondents met any burden on agency here. And I'll get to why. But the main reason why, if this court doesn't accept our direct effects argument, which would resolve the issue on its own and needs to proceed to the acts within the United States exception, the main reason I think this court should consider it is because if you take a look at the motion that the respondents filed, and in particular this argument is addressed at page seven to eight of their motion, it's identical to what's before this court. Their arguments haven't changed just because I, as new counsel, have raised the act. So there's no prejudice here. But let me talk a little bit about direct effects now, which was raised. I think we can sum it up pretty quickly. First, the acts abroad are far ranging. I don't think there's really any dispute that there's plenty of facts alleged that took place in China. Breaches of the 2005 contract, coercion in establishing the 2008 contract, the very existence of the 2008 contract, which was executed in China, and the cancellation of the 2005 contract itself. Truly, after the 2005 contract was actually reached, all of those activities do take place in China. The respondents do make a half-hearted attempt to say, well, some of this might not be commercial activity as to Wuhan. I don't think that the case law supports that at all. The best case for us would be practical concepts on that point. This is a commercial transaction, buying and selling a factory. For me, the linchpin is whether or not you come within that third version of commercial activity and whether or not there are direct effects in the United States. And you were dismissed because the district judge thought that you didn't have sufficiently specific allegation of business that you otherwise would have had. And he dismisses with prejudice. And the issue for me is, if we remand and say, give them a chance to round up some more allegations, and given Rule 11, presumably backed by some evidence when you get around to it, are you going to be able to do that? I do think so. And I've got a whole list of things that we would allege and plead differently if given the opportunity. So the question is, why didn't you plead it before? I mean, that's his point. He says, this case has been hanging around for a long time. It was. And let me speak to that. Because my client's former counsel filed the complaint. And the amendment came in adding defendants. But this was the very first time these pleadings had been put at issue. The very long time. I understand that. There was a problem with service, right? There was a huge problem with service. So the respondents were specially appearing constantly for years and contesting personal jurisdiction, but refusing to accept service. And ultimately... At one point, the district judge even threatens to dismiss for failure to prosecute. Were we having some dilatory behavior on the plaintiff's side? I mean, I'm trying to figure out what was behind that OSC on failure to prosecute. I don't believe so. My recollection, and I believe that the transcript of that proceeding is actually in our excerpts of record, although it was filed... because there was a state court case and a federal case. And so at one point in time, that transcript was in the other case. But I think the problem was just simply getting... effecting service in China proved to be very difficult. And my client's counsel tried in various ways and ultimately was able to effect service on... So to go to this issue, I mean, I gather that you're not really defending or contesting the decision based on the existing complaint. Well, I am. As to the direct effects. I am. Well, the complaint, I think that's right. The complaint doesn't talk about the direct effects here really, except for... I would say one direct effect would be the entry into the 2008 contract, deprived a U.S. company of its... But then even with regard to an attempt to demonstrate that there was any actual contracts that were affected, they're not actual contracts that were mentioned. The ones that were mentioned, they were just somebody's interested in this and might be interested in buying this, somebody might be interested in buying that. That's all there was. And then when he was asked, well, were there any actual contracts, he says, I don't know. He didn't know. I do. The 4G-TRAG contract, my understanding is that it was an actual contract. 4G-TRAG is headquartered in Germany, but it's a 50% joint venture U.S. company and I believe a 50% German company. That contract was real. The real problem that we've had in this case and the real problem that my client's counsel had is that when the factory was taken over in China, so too were the contracts and all of the various business records. But I just want to just be orderly about it. Sure. Given what I said before, do you have any argument about an adequate basis on the current record and the current complaint? And I believe that although it could be far more clear that that contract did exist and that those contracts take this case out of Turankian and other cases. There weren't any contracts. You're talking about the ones you could allege. I'm trying to find out before we get to could allege, what about what you did allege. I believe the 4G-TRAG contract is alleged. The language of it could be clearer, but in the declaration of G.C. Chow, which is at ER 108 and 112, he does, well, as I said, it could be clearer. I know that this contract, which is alleged in paragraph 13 of this declaration, was an existing contract. That is my understanding. What's the paragraph in Chow's declaration? Paragraph 13 at ER 112. Reading it again, it's not that clear. It's not that clearly stated. But that was an existing contract. Where he says, and the contract with 4G-TRAG? Yes, exactly, and the contract with 4G-TRAG involves. And you're saying not too clear because the contract isn't described and so on. Right, well, I mean, because it also talks about the customer list. It becomes ambiguous, and I understand why the district court didn't accept this, but I don't think that that was correct. So then in terms of what you could allege, you haven't made to us in writing any specific representation of what you could allege. You're now going to do that, is that it? I'm happy to do that. I mean, I don't think the case thought, is there any possibility that an amendment could be saved? It doesn't, I don't think, require us to put a red line together, but I'm happy to tell the court. I mean, some of it is already in this record. The Weltover, for example, the Supreme Court's decision says that an act that places the plaintiff in immediate financial peril, that's adopting the Second Circuit's view, is enough, and that the failure to pay money in the United States is enough. One of the things that we would allege... It's almost enough under that theory that your client is an American company that suffered. Well... End of analysis. Yes and no. I don't think that's enough under the case law, because then you really are talking about mere financial loss, and mere financial loss is extremely difficult to get your arms wrapped around, because in Weltover, which says mere financial loss is not enough, all it was was a financial loss. It's just that the payment was due here. So take, for example, the 2008 contract. You'll see in the 2008 contract, which is part of the record, that payment was to be made to my client at a designated account. My client designated a United States account for the International Commercial Bank of China, and that's where payment was made. That's not in our pleading, and that's not in the record, but that is something that I would be able to plead on a 2008 contract. On 2005, I would show the court, for example, that contract talks about funds coming from outside of China. This was the United States... So if we were to allow... So if you could survive on the FSIA, either with this amendment, and you also have a Section 1 argument, which has a waiver, what about the choice of... Sure. The form selection clauses. I start with the premise... I find it very confusing. You both seem to be pointing like this, because you're the one who says that the 2008 agreement is invalid, but you want to use the 2008 form selection clause, and they say that the 2008 agreement is valid, but they want to use the 2005 form selection clause, which is all very confusing. It sounds like that, but it's actually a little different. I think you're right about what they're doing. Don't look at 2008. Don't look at my left hand, just look at my right. They're saying don't look at 2008. I'm saying you have to read them together, and if they contain two different... I don't think there's any dispute that the forum selection clauses in 2005, which selects a Chinese court in Wuhan, and 2008, which selects arbitration, can't be reconciled when it comes to this dispute. You had said in the brief something about one was permissive and one wasn't, and I don't see that. Well, this comes back to my first point. If you take them in isolation, then you are probably dealing with a mandatory selection clause in both cases. Now, we have different grounds to avoid them, and I don't want to lose sight of that. Fraud, coercion, and duress, things like that. But if you take them in isolation, they're probably mandatory, but you can't take them in isolation, and together they can't be reconciled because they... But not because... But you never really say this, but I assume behind what you're saying is that the arbitration clause would be invalid even if the court selection one wasn't. The arbitration clause absolutely would be invalid because it was procured through duress, economic... But also because the arbitrator isn't a court and it looks to be the city of Wuhan or some governmental entity. It would not be enforceable on any number of grounds at law that you would... It's very odd because you never said that, and they never said why they were trying to avoid it. I hope that I did. I'm sorry if it wasn't clear, but the 2008 would not be enforceable on those grounds, and they don't really even dispute that. I mean, I think that's clear. But that doesn't mean you're left with 2005. You've got to look at both of these together. And I think the argument is that 2005 is not valid because that contract was procured by fraud. Because that forum selection clause was procured by fraud. Sounds like the whole contract. You allege the whole contract was a fraudulent enterprise. Both. Both. But the law does require us to say that in order to invalidate a forum selection clause, we've also got to talk about the fraud directed to that clause, and we've done that. And I'm running short on time. Let's hear from the other side, and we'll make sure you say what you need to say in rebuttal. Thank you. May it please the Court. Richard Clickler for Appellees. There are two ways to analyze the lost business. What are we not supposed to look at now? If I could just start with the direct effects. There are two ways to look at the lost business that was the sole basis alleged before the district court for an immunity exception. The first is more straightforward. That's simply that we had a facial challenge to the adequacy of the complaint. There's absolutely nothing in the complaint that addresses either contracts or other lost economic opportunities. So plaintiffs didn't carry their burden, and the district court's discussion of evidence really goes to the repleting issue. So if I agree with you that there's not enough in the complaint, and even in the declarations not enough, why was it not an abuse of discretion for the district judge not to allow amendment? Right. So the basic foment factors of undue delay, particularly, but also fidelity and prejudice are at issue here. This was not the first chance to have a substantive change to the complaint at all. But it's the first time the judge has ruled against the other side on this ground. That's accurate. That is accurate. The first was a substantive change in terms of adding two causes of action, allegations associated with that, changing the personnel and the acts alleged, and then adding the two defendants. But then the district court did give another chance in a sense, and had the district court just at that point said, there's nothing in the complaint. I'm remanding. It would be a different case. Instead, the district court went out of its way to look at all the evidence that the plaintiff had submitted in opposition to our motion. That was the district court's chance to say, after being put on notice by us, that there isn't enough here. They essentially made it proper. Here is everything we have. And then the district court further, at oral argument, pressed counsel in some way. Is there anything else you have? What facts exist that would let you have another basis for further allegations? And I think that the three years, and I gave them lots of chances, and then they didn't come forth with anything, is a reasonable approach to the undue delay factor. But what makes it particularly reasonable is some of the comedy interests at issue here, that Peterson indicates that foreign sovereigns have an interest not only in being subject to... I'm sorry, they have an interest in not only being shielded from ultimate liability, but being shielded from the costs and burdens and, in a sense, the indignity of being forced before a foreign tribunal. It also indicates that comedy interests underlie the burden that's placed upon a plaintiff to invoke and show an exception. In both, allowing a repleting in this case would undermine both of those interests. I think it goes to the unreasonableness of the delay. It also goes to factors related to prejudice. What's the timing in the district court when the district judge is saying, please give me more, the plaintiff comes back and says, this is what I've got, what's the timing of that in relation to our decision in Terrenkian, Judge Aikuda's decision? The reason I ask that is that I think Judge Aikuda's decision tightens up the requirement for direct effect. As you say, after Terrenkian, I think more is needed than previously. I'm not precisely sure what the timing is. I'd have to check exactly when Terrenkian was decided. September 2012. Good. Our motion to dismiss is in September 2012. Their opposition then is after Terrenkian and the hearing is the following January. I would submit, though, that Terrenkian, for this purpose, didn't tighten any relevant standard. It at least clarified it. With ones, twos, and threes, and fours, and this is what you're supposed to do. It clarified it, but even if you view it as raising the standard, it didn't raise it in any relevant respect for plaintiffs. They fell so far short of the standard in Corso, and Weltover, and Adler, that there needs to be a direct and immediate effect. Yes, but then when they came in with this declaration, at least with regard to the Ford whatever it is company, it was murky what they were saying, and you couldn't tell, I would say, whether they could have alleged something adequate or not from what it said there. I mean, you couldn't say that they would, but I'm not sure you could say that they wouldn't. Right, but at that point, it's a matter, and to the extent it's relevant, it's relevant as a matter of evidence at that point. I mean, the... Well, I understand that, but the question is when you say that you should give people a chance, you know... But the court did that in a sense, I mean, in a very direct sense. It read the pleadings. It didn't even have to look at the declaration. It could have said, no, the complaint's insufficient. The court turned its attention to... Well, but that's the point, I think. If they had just said the complaint's insufficient, then they truly would have allowed it. It seems to me they had to allow an amendment, but instead he said, show me what you might amend, and the question is, do you hold that to a pleading standard or what? The chance... He gave them two chances in a sense. The first was put on notice. He looked at the evidence, and then when we said, no, that's not enough, in our reply, then at oral argument... But he asked a question, right? He did, yes. No, he pressed them. He gave them every opportunity at oral argument. And all he heard was, I don't know. Give me a chance to find out. That's right. Let me go see if there's any contract. I know nothing. You know, there is nothing... It doesn't prove that there wasn't one. Pardon? It doesn't show that there wasn't one. There was none known to counsel. And let me... If I could just... Sorry, Your Honor. No, go ahead, please. Look, the notion that there's new counsel involved, which was a point raised in Plaintiff's reply, simply isn't apt here. What happened in September was that new counsel was associated with the case. Old counsel continued. This is document 49. New counsel came into the case six weeks before their opposition was filed. It contained paragraph 13 with the reference to the documents and 3 1⁄2 months before oral argument. You know, they had ample opportunity, and he had the assistance of existing counsel as well. He wasn't displaced in that sense. Do you want to address understanding that you have a waiver claim, which is, you know, not trivial or to be ignored, the first exception? In other words, we understand your waiver argument. What about on the merits? On the merits, there are three reasons that the first exception doesn't apply. The first is that the substantial context test requires more than the one meeting in Los Angeles and... Well, the complaint, I mean, it does say that that was part of the negotiations and some of the terms were laid out, that they were acting as agents for all of the defendants, that it was a significant part of the negotiations, as I understand it, even though they then went on for another year, a year and a half. Well, I don't think that's a fair reading of the complaint. I mean, the initial wire communication at 12 and 13 is not alleged to have any tie to the United States. At most, it indicates in complaint paragraph 1 that Intercontinental does business on a worldwide basis. For the L.A. meeting addressed in paragraph 14, it indicates that there's an initial proposal of basic terms presented by Mayor Lee as he leads a trade delegation. And then 17 months later, there's a contract. It doesn't suggest there's any negotiations. It's just a one-day meeting. You called it a trade delegation, but it says that they proposed a transaction where and planned to put invest funds, technology, and equipment into an existing factory known as the same factory and owned by the defendant and it was worth a certain amount of money and if they invested $1.7 million, they would buy. I mean, basically, the terms of what turned out to be the agreement, no? The basic terms of the agreement? It doesn't sound like a trade delegation to me. A trade delegation, as I understand it, the mayor goes and says, San Francisco's a nice place. Why don't you come to business there? If I could return to the trade delegation in a second. There's still a one-time, one-day meeting where the basic terms are presented and Trankian, Grossman, BP Chemicals, and Papandreou all indicate that a single meeting, even if you added in the wire communications that aren't tied to the United States, that does not meet the substantial context test. And the fact that there may be substance discussed at the meeting doesn't change any of those holdings. I actually have trouble with that. Maybe I'm having trouble with the case law, but it seems to me that if someone comes to this country, proposes the terms of a deal, that's the deal that's ultimately reached, we've had a fair amount of business done in the United States. This is not just came to the United States for a ceremonial signing of a contract negotiated elsewhere. No, the very terms of the contract were proposed in the United States by your client. That's true, but that's the Grossman meeting. BP Chemicals, there were a series of meetings with a whole set of input suppliers where the basic trade secrets were disclosed and the contracts were allegedly solicited. Yeah, and maybe my quarrels with the case law. What about the Forum Selection Clause issues? On the Forum Selection Clause issues, frankly, the reason to address them, those that are laid out in SINA-CHEM, where there's uncertainty or difficulty regarding the subject matter jurisdiction issue, dismissals, an alternative basis, the reasons to go ahead and do that are to give effect to a Forum Selection Clause, Bremen and Atlantic Holdings, and the sovereignty interests related to Peterson. In terms of the merits of the issue, on the mandatory nature of the Forum Selection Clause... She said they were mandatory. Pardon? I mean, I understood her to agree that they were mandatory, except in the sense that if both of them apply, which one applies? Although I was confused by the briefs, too, because the language does seem mandatory. I understand it to be saying something a little different. I think the district judge handled that issue appropriately, that both parties agree that the 2005 contract is valid during the entire time of the wrongs alleged in China. The language says disputes respecting... That I don't understand. I mean, the ultimate wrong was entering into the 2008 agreement and terminating the contract, and the 2008 agreement purports to vacate the 2005 agreement. I think the gist of the wrongs alleged are the various wrongs in 2008 that squeezed, basically coerced, allegedly coerced the... Yes, there's no injury until the 2008 agreement is entered into. That's right, and the claims for the arbitration provision need to arise under... It's the entering into the existence of the coerced 2008 agreement. No, I really think it's conduct before, but even if it is the 2008 agreement, under Minetti you look at the challenge to see whether the forum selection clause applies, and their challenge doesn't arise under that agreement or relate to the performance of it. It's respecting the 2005 agreement. They seek to enforce the 2005 agreement and to rescind the 2008 agreement. And just to clarify, is the reason... Is our instinct about why this distinction matters to you is because there's no way the 2008 agreement is enforceable? No, the distinction... It's just a response to plaintiff's argument that something about the 2008 contract makes the 2005 one not mandatory. I think the district court was entirely correct and basically said to the extent that there's a dispute about the 2008 contract, there isn't one, a dispute, regarding the 2005 one, so leave it to the Chinese courts, if any one, to sort out the implications of the arbitration provision. Good luck with that one. But what about the argument that the 2005 contract as a whole was produced by fraud, including the forum selection clause? It seems to me that there's sufficient allegation of the complaint to support that. That is to say, I think I just disagree with the district judge on that point. Talk me out of that? I can try. So Bremen provides the basis for indicating that the party challenging a forum selection clause bears a heavy burden and only in exceptional circumstances will the enforcement of it be brought. Well, these may not be exceptional circumstances in China, but they look like exceptional circumstances to me. Right. And then Richard T. Lloyd's is the en banc decision that plaintiffs referred to, where it has to be the actual inclusion in the contract of the arbitration clause or its legal effect that is the basis of the fraud. It can't be there's a general fraudulent scheme or that there was fraud floating around or generally led to it. It has to be linked to the inclusion. And the one statement that is relied upon for fraud at this point is Mayor Lee's statement before the L.A. meeting regarding whether there would be basically no disputes. We'll take care of you. Don't worry about it. We'll take care of you.  And then later saying, well, there's no point in complaining because we control the courts essentially. Well, that's a Wuhan official who that's a Wuhan commercial official who says we'll prevail in court. That's right. Because we control it because the government controls it. Well, the courts haven't addressed that. The Chinese courts haven't addressed the issue. It's someone who's saying we're going to win if you go to court. But the Lee statement about everything will be okay. There's no contract at that point. There's no proposal. It's 17 plus months later that there is an arbitration clause. So that doesn't go to the inclusion of the clause. And it's at most a statement that there'll be no disputes that will arise. You know, we'll take care of you. It doesn't go to any misapprehension about what the operation of the clause would be. So under the basic Richards v. Lloyd test, that isn't enough. Okay. Okay. If I could elaborate just on prejudice related to the commercial activity exception. With regard to the amendment or with regard to the exception one? I'm sorry. This is to consider the commercial activity exception at all and the prejudice that it would visit on us. If there's no interest in that, I can address it. The commercial activity exception meaning the first exception. The first prong. That's right. So as you say, it was disavowed. I thought they were all commercial activity exceptions. Sorry. Commercial activity in the United States meaning the first prong. That, you know, there's not only the disavowal, but there's prejudice to us in two senses. One is related to a tactical aspect and one's related to substantive. The tactical one is that at the same time plaintiff disavowed the issue. They also submitted substantial evidence that actually helped our argument on that point. Establishing that all the significant commercial negotiations on the point took place in China. Had they not waived that, we would have done, you know, one of two things. We would have asked the district court to consider that just as it did for the contract in relation to the direct effects test. But you don't get to do that because this is just a motion to dismiss. You get to do it in a motion to summary judgment. You still do. I'm not quite sure that's right. That we can at least... It's within the court's discretion under Adler, Sachs, and BP chemical to take a look at the record. You switch it to a non-facial attack. That's right. That's essentially... It switches from... All three of those cases say that once the district court turns its attention to the record, then it becomes a factual challenge. And Adler says the court has discretion to take a look at the record. So... But in any event, you're going to get a chance to do that. I mean, if there were to amend their complaint, you'd still... You could either do it then, or you could do it... Presumably, you could then mount a factual challenge, or you could do it on summary judgment. Right. But Patron says if there's prejudice involved at all, then we won't... I know. I'm trying to understand what the prejudice is. You're going to get to do it if they amend the complaint. We didn't get to do it. I know, but you will get to do it. I'm sorry. Right. You're not going to be out of court without the chance to do it. Right. This is not related to the complaint amendment point. This is just related to whether now you can consider the commercial activity point. You're not?  That's what they're asking you to do. No, no. All right. We won't address that anymore. If I could make... My question really would be, do we include, if we remand, in the remand order, that the first prong of the commercial activity should be open at the discretion of the court? Right. I see. So the substantive pressure, that prejudice then, is more relevant for that. Under Peterson, the burden on the plaintiff to invoke and show an exception is identified as a comedy interest, as is the interest I mentioned about not being subject to ongoing litigation. If the plaintiff can take multiple bites at the apple, either on appeal or on remand, then those interests are undermined and that's the prejudice to the issue. So you're really arguing for an exception to the free amendment rule for this line of cases? I don't... I think that there is a countervailing interest to the Fomen analysis that is very important in the comedy context. I think also the circumstances surrounding the way the district court went out of its way... I'm sorry. I see my time is up. ...that the circumstances surrounding it actually brings this case within that line of cases, showing that it's not an abusive discretion, even without the prejudice. I'd also just mention that Hubei in particular, because plaintiffs can't show that there's commercial activity in China for Hubei, they allege that it's sovereign activity. Denial of permits, use of police power, the imposition of the requirement that was the tied up $10 million and the failure to give governmental relief, that makes it even more futile to show the commercial activity exception for Hubei. So if there is a remand, it should be limited to holding group where there is actually some commercial activity as the plaintiff defines it, implicated. They define the commercial activity as the sale and purchase of the contract and their own complaint associates that with holdings group and distinguishes the wrongs against Hubei as sovereign acts. Let's put three minutes on the clock and see what happens. Thank you, Your Honor. Let me start by clearing up something that I think may have been confused at the beginning of the respondent's argument in terms of the number of chances the district court gave and what happened. There was briefing like any normal brief. Motion, opposition, reply, hearing. Mr. Chao's declaration was filed with the opposition? Correct. There was no, we came to a hearing, we argued, the district court sent us back, bring me more. That didn't happen. So the notion that the court said, well, give me more or here's another chance, what else can you do, just isn't true. Instead, what happened was he asked the question of my client's counsel about those contracts in particular among a bunch of other things. And that lawyer said, what I would request, Your Honor, and this is at ER 25, what I would request, Your Honor, is that plaintiff be given an opportunity to amend its complaint and possibly provide the contracts. And the court said, no, I don't want you to do that as he started to go on and make an argument. That was it. There wasn't a go back and forth and try again, try again. This was the first opportunity. Exactly what you said, Your Honor, was a note I had taken. The idea that you can't have repleting because there's a Foreign Sovereign Immunities Act situation would mean that you would just create an exception for those cases where if someone has not adequately pled in their papers, an exception under the commercial activities or other exceptions, that under the FSIA, the rule is you don't get another chance because sovereign immunity is too important. There's no other way to look at this case. Except if you have Mr. Chow's declaration. Right, but you'd have that in most cases. Even, I mean, in most of these cases... But the judge didn't just look at the allegations in the complaint. He looked at the declaration as well. That's true. He sort of created an evidentiary kind of ruling. That is true to an extent, yes. I mean, he did take, he did look at the declarations that were given. And he did ask. I mean, that's where it seems to me things get pretty peculiar because they ordinarily, a lawyer ought to know the answer to that question. It was obviously the key question. I can't disagree with you there. But I think that the record itself was adequately built to support our client. Now, one of the things you heard on the commercial activities, excuse me, the prong one exception  this record was put in by my client about the correspondence back and forth between these parties in negotiating the contract. And that if my client had raised the first prong exception in its opposition, well, respondents would have argued something different in their reply. Well, that's just a legal argument based on the evidence that's already in the record. I understood him to say we would have then sought to make a factual rather than facial challenge. Well, based on evidence that was already in the record. And the point is... Presumably, they could still do that. I mean, it's not based on evidence that's already in the record. Because there was no evidence already in the record. The point is, when you make the factual challenge, I assume you come in with evidence. Right. The argument that respondent was making is that if the court takes a look at the Chomsky Declaration, which translated in a different form all that my client had put in the record on opposition, it's at ER 58 through ER 105. Those are negotiation letters back and forth. And I'm sorry, this isn't negotiation in China. This is negotiation from China to my client in the United States using faxes. Back and forth negotiations for years following that meeting in Los Angeles. This thing was negotiated for a very long time. Are you doubting that if you went back to the district court that they could mount another challenge to the prong one? I'm not. Factual challenge. I'm not. But the argument I heard was, well, limit them. Don't let them make a prong one argument. And my point is, I actually think this court can rule in our favor on the prong one. Because BP Chemicals and Turankian say, maybe a single just meeting isn't enough. But this wasn't a single meeting. As Judge Fletcher pointed out, this was a meeting to negotiate this contract followed by negotiating documents coming to my client in the United States. Does the fax case matter? I.e., is there any reason we need it? The reason I don't think it matters is because I don't think that there's any issue over whether or not, the issue that was raised in the pleadings by the respondents is whether that trade delegation meeting was really on behalf of these respondents. And I agree with the point that Your Honor made that there's no other way to look at this. It was negotiating this contract, whether it was done for the government or it was done for Holdings Group, it was done for these respondents. And it specifically discussed Holdings Group being the entity that was involved. I thought that's what I read. I think that's right, but certainly it was this factory and this transaction. It wasn't just a come invest your money in China kind of meeting. So I think this court can rule in my client's favor on the commercial activities exception as well as the direct effects, I'm sorry, the first prong of activity in the United States exception right now and forego any further proceedings. But at a minimum, we should be given the jurisdictional discovery that my client asked for, particularly because those contracts, as I mentioned, apart from the one and only that I'm able to talk about today, they're in the possession of these respondents. Those other contracts are there. And an opportunity to replead. You hope they're still in their possession. I hope they're still, and I hope that we can get them through jurisdictional discovery, but we ought at least be given the opportunity to do that. And I see my time has expired. I did want to point the court, if I could, to one issue on the forum selection clauses that the court raised, if that's okay. I want to be clear. Standing alone, those two clauses probably are mandatory. But I don't really understand what you mean then. I mean, all you're saying is that it's confusing whether you have to arbitrate or go to court. Is that what you're saying? No, I'm saying that in order to enforce a forum selection clause, it must be a mandatory clause. Okay. But you cannot view these two clauses in isolation because they relate to the same transaction. They have to be, and both sides agree with this, they have to be read together. But why then are they non-mandatory? I'm sorry? Tell me why they're non-mandatory. Because you have to read the two clauses together. One requires, the forum that is required in the 2005 contract is Wuhan Court. That's just what I said. It's because if you read them together, you're saying you get a choice between the court or the arbitration. I'm saying, well, that is why they're not mandatory because they call for two different things. Whatever they are, they're in China. Yeah, well, the problem is for your client, the two choices are China and China. That's true, but they still conflict. And the fact is, you look at the language of those clauses, and if they conflict, they can't be mandatory. I can't be required to arbitrate or litigate in one forum, wherever it is. So in your view, that means they just explode. They're both gone. They're both permissive, is what happens, I think, because they're not exclusive. That's the test. Are they exclusive? They're not. So then they're permissive. And I just direct the court's attention to the In Re Astro Power case that we cited on this point. The argument from the other side that 2008 controls means 2005 is gone, including its forum selection clause. Okay, thank you very much. Thank you. We took both of you over. Thank both of you for your good arguments. And the case, Intercontinental Industries v. Wuhan State-Owned Industrial Holdings, submitted.
judges: Fletcher, Paez, Berzon